UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RUDY RIVERA, | Case No. 2:17-CV-2776 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| DANIEL BOGDEN, et al., | |
| Defendant(s). | |

Presently before the court is defendant CoreCivic's[1] ("defendant") motion for summary judgment. (ECF No. 47). Plaintiff Rudy Rivera ("plaintiff") filed a response (ECF No. 50),[2] to which defendant replied (ECF No. 63).

**I.     Background**

This is a *Bivens* civil rights action arising from plaintiff's protracted pretrial detention. (ECF No. 1); *see also Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff alleges that on November 25, 2014, defendants Daniel Bogden and Amber Craig, who are both federal prosecutors, filed an indictment charging plaintiff with marijuana-related offenses. (ECF No. 3). On that same day, a Nevada federal court issued a warrant for plaintiff's arrest. *Id*. On October 26, 2015, federal marshals in the Eastern District of California arrested plaintiff and placed him into custody. *Id*. On October 27, a magistrate judge ordered plaintiff to be detained pending transfer to the District of Nevada for his initial detention hearing. *Id*.

---

[1] Corrections Corporation of America, CoreCivic's corporate predecessor, was the defendant originally named in the complaint.

[2] After extensive litigation (*see* ECF Nos. 51; 56; 58; 59; 60; 62; 64; 65; 66; 67; 68; 69; 70; 71), plaintiff filed an unsealed copy of his response with redacted exhibits (ECF No. 72).

**James C. Mahan**
**U.S. District Judge**

Plaintiff further alleges that he was transferred to the Nevada Southern Detention Center ("NSDC") on or about November 4, 2015, where he remained in solitary confinement for the next 355 days. *Id*. During his detention, plaintiff repeatedly requested counsel and to be taken to a judge, but defendant ignored his requests. *Id*. After almost a year, plaintiff was able to send a letter to the federal public defender's office, which ultimately caused plaintiff to appear before a magistrate judge on October 24, 2016. *Id*. The magistrate judge released plaintiff on a personal recognizance bond. *Id*. On February 1, 2017, the Nevada federal court dismissed with prejudice the charges against plaintiff. *Id*.

Plaintiff also alleges that his solitary confinement caused him to experience extreme agitation and suffer severe anxiety for which he had to receive medical treatment. *Id*. Plaintiff describes his symptoms as "extreme and severe fright, shock, fear, horror, and emotional distress." *Id*.

On November 3, 2017, plaintiff filed his first amended complaint. (ECF No. 3). The amended complaint raises eight causes of action: (1) violation of the Fourth Amendment, (2) violation of substantive due process under the Fifth Amendment, (3) violation of procedural due process under the Fifth Amendment, (4) violation of the right to counsel and access to courts under the Sixth Amendment, (5) negligence, (6) negligent infliction of emotional distress, (7) intentional infliction of emotional distress, and (8) false imprisonment. *Id*.

Plaintiff's first, second, third, and fourth claims were brought against other defendants, who were dismissed pursuant to the parties' stipulation. (ECF Nos. 3; 35; 36). Plaintiff brings only the fifth, sixth, seventh, and eighth causes of action against defendant. (ECF No. 3). Defendant now moves for summary judgment on those claims. (ECF No. 47).

**II.   Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

"to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**James C. Mahan**
**U.S. District Judge**

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As an initial matter, the court finds that plaintiff's claims are not supported by his placement in administrative segregation. Defendant has shown—and plaintiff admits—that plaintiff's status as a "Norteño dropout" put him at risk of physical harm if he were put into the general prison population. (ECF Nos. 47 at 4–6). Indeed, plaintiff would have been assaulted or even killed on sight by either Sureño gang members or active Norteños. *Id.*

Because NSDC lacked a separate general population unit where Norteño dropouts could be safely housed at the time of plaintiff's incarceration, housing plaintiff in administrative segregation was a legitimate penological decision. To hold defendant liable for this decision runs contrary to law, particularly because defendant would have certainly breached its duty to plaintiff had it housed him in general population and allowed active gang members to assault him.

Thus, the court considers plaintiff's negligence, false imprisonment, intentional infliction of emotional distress, and punitive damages claims regarding only his prolonged incarceration without arraignment.

*A. False imprisonment*

Under Nevada law, false imprisonment is the "unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." Nev. Rev.

James C. Mahan
U.S. District Judge

- 4 -

Stat. § 200.460. To establish a claim of false imprisonment, "it is necessary to prove that the plaintiff was restrained of his or her liberty under probable imminence of force without any legal cause or justification." *Garton v. City of Reno*, 720 P.2d 1227, 1228 (Nev. 1986) (brackets omittted). An individual's "submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment." *Lerner Shops of Nevada, Inc. v. Marin*, 423 P.2d 398, 400 (Nev.1967).

An arrest or imprisonment pursuant to a valid legal process is generally not actionable under false imprisonment. *Nelson v. Cty. of Las Vegas*, 665 P.2d 1141, 1143–44 (Nev. 1983). However, imprisonment following a valid arrest becomes actionable when an officer "fails to take the arrested person before a court or magistrate within a reasonable time or without unnecessary delay." *Id*. at 1144–45. When an otherwise lawful detention is unreasonable, only the officers that participate in the detention, and their principals or employers, are liable for false imprisonment. *Id*. at 1145.

Plaintiff does not argue that his initial indictment or arrest warrant were defective. Nor does he dispute the initial validity of his imprisonment. Plaintiff's false imprisonment claim stems only from his prolonged incarceration without being arraigned before a magistrate judge.

The court finds itself at the crossroads of two Ninth Circuit decisions: *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ("*Oviatt*"), and *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245 (9th Cir. 1999) ("*Brooks*"), *as amended* (Dec. 9, 1999). On one hand, the *Oviatt* court held that a county inmate could sustain a false imprisonment claim against the county after being held for 114 days without being arraigned. *See generally Oviatt*, 954 F.2d 1470. On the other hand, the Ninth Circuit distinguished *Brooks* from *Oviatt* and found that a county was not liable for false imprisonment of a federal inmate. *See generally Brooks*, 197 F.3d 1245. The Ninth Circuit explained that "[w]hereas *Oviatt* was a case involving whether the left hand knew what the right hand was doing, [*Brooks*] a case involving whether *my* left hand knows what *your* right hand is doing." *Id.* at 1248 (emphasis in original).

Here, the court finds that *Brooks* controls. The plaintiff in *Oviatt* was incarcerated in the Multnomah County Detention Center; he sued Multnomah County and the Multnomah County

**James C. Mahan**
**U.S. District Judge**

sheriff. 954 F.2d at 1472. The Multnomah County sheriff administered Multnomah County's corrections division. *Id.* at 1473. Thus, liability fell squarely on Multnomah County and its officials. These facts are not similar to the facts of this case.

In *Brooks*, although plaintiff was held in the county's jail, he was indisputably incarcerated by and in the custody of the United States Marshals Service. 197 F.3d at 1248. "[T]he [c]ounty held Brooks only so long as the Marshals Service directed it to, and no longer." *Id.* Thus, although the county physically held Brooks for 12 days without an arraignment, the Ninth Circuit affirmed the district court's Rule 12(b)(6) dismissal of the county because:

> In the circumstances, the County's policies, whatever they may have been, could not have altered what happened to Brooks. The County was without authority either to bring Brooks before a federal magistrate judge itself, because it cannot act for the United States, or to release him, because it cannot ignore the state statute. Indeed, Brooks does not allege that the County could have pursued either of those courses. Therefore, the only causes of Brooks' prolonged detention were the actions of the United States (which settled with Brooks) and the state statute (which goes unchallenged). Causation is, of course, a required element of a § 1983 claim. *See Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992).

*Id.*

Here, as in *Brooks*, plaintiff was in the Marshals Service's custody, but was housed in the facility defendants operate. The two biggest points of divergence between the facts in *Brooks* and the instant case are (1) the mechanism by which the defendant had authority to hold the plaintiff and (2) the length of detention. The county held Brooks pursuant to California Penal Code § 4005(A), whereas defendant held plaintiff pursuant to a contract between defendant and the Marshals Service. Admittedly, Brooks was detained for only 12 days; plaintiff here was detained for an egregious 355 days.

The first difference does not affect the court's analysis. Whether it be by state statute or by contract, defendant did not have legal authority to bring plaintiff before a federal magistrate judge itself because it could not act for the United States. Similarly, defendant could not have simply released an inmate it was instructed to incarcerate. As defendant argues:

> It is further undisputed that [defendant], unlike Alameda County in *Brooks*, had no independent legal authority to arrest or detain anyone, including [p]laintiff; to determine who would be housed at

> NSDC, and for how long; to determine whether or when a detainee would be sent to court; or to order a detainee's release; and there is no evidence that [defendant] maintained (or maintains) the type of "linkages" with the District of Nevada courts that the Multnomah County Sheriff's Department shared with the Multnomah County courts. Federal statutes and regulations make USMS—not [defendant]—the legal custodian of federal pretrial detainees with authority to arrest, detain, and release them. *See* 18 U.S.C. § 4086 ("United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."); 28 C.F.R. § 0.111(k) (providing that the USMS is to maintain "custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of the U.S. Parole Commission or the Bureau of Prisons").

(ECF No. 63 at 11). This argument finds further support in defendant's contract with the Marshals Service, which provides that defendant "does not have a right of refusal and shall take all referrals from the USMS." (ECF No. 50-6 at 13). Thus, defendant was obligated to accept and hold any inmate in the Marshals Service's custody, and the Marshals Service had sole authority over the incarceration and release of inmates from the facility.

Next, plaintiff notes the length of his confinement and relies on the *Oviatt* court's observation that "the jail system had no internal procedures for keeping track of whether inmates had received an arraignment or attended other scheduled court appearances." (ECF No. 50 at 17); *Oviatt*, 954 F.2d at 1473. Thus, by plaintiff's estimation, defendant's failure to track and follow up on plaintiff's detention amounts to false imprisonment. This argument, although compelling on its face, is unavailing.

First, the court notes the Ninth Circuit's other admonishment in *Oviatt*: "**a local governmental body** may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt*, 954 F.2d at 1474 (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)) (emphasis added). Further, the *Oviatt* court was addressing the jail's procedures when the jail was run by the county, the policies were determined by the county, the county was charged with decision-making, the county arrested and detained the plaintiff, and the county was attempting to blame the court.

James C. Mahan
U.S. District Judge

- 7 -

1  Here, however, plaintiff was detained by the Marshals Service. The Marshals Service certainly had a duty to ensure the constitutional rights of the inmates in its custody were protected. The Marshals Service had the authority and obligation to bring plaintiff before a magistrate judge. Whether the Marshals Service failed in its duty does not change the fact that defendant is not a local governmental body. Defendant could not act for the United States and could not unilaterally release plaintiff.

Accordingly, the court grants defendant's motion for summary judgment as to this claim.

*B. Plaintiff's remaining claims*

Plaintiff's remaining claims—negligence,[3] intentional infliction of emotional distress,[4] and punitive damages[5]—are subject to the same analysis as his false imprisonment claim.

Because defendant could not act on behalf of the United States or contravene the Marshals Service's decision to incarcerate plaintiff, they did neither had nor breached a duty to plaintiff. Thus, plaintiff's negligence claim fails.

Similarly, defendant's conduct was not "extreme and outrageous," nor did it cause plaintiff's distress; instead, the fault lies with the Marshals Service, which failed to bring plaintiff before the court. Consequently, plaintiff's intentional infliction of emotional distress claim fails.

Finally, because plaintiff's underlying claims fail, he cannot sustain an action for punitive damages.

Accordingly, the court grants defendant's motion for summary judgment.

---

[3] To state a claim for negligence under Nevada law, a plaintiff must allege four elements: (1) a duty of care, (2) a breach of that duty, (3) causation, and (4) damages. *Turner v. Mandalay Sport Entm't*, 180 P.3d 1172, 1175 (Nev. 2008).

[4] To state a claim for intentional infliction of emotional distress under Nevada law, a plaintiff must allege: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

[5] "[I]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied," a plaintiff is entitled to recover punitive damages. Nev. Rev. Stat. § 42.005(1).

James C. Mahan
U.S. District Judge

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (ECF No. 47) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment and close the case accordingly.

DATED March 13, 2020.

_____
UNITED STATES DISTRICT JUDGE